```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM R. HENDRICKSON and
PATRICIA HENDRICKSON,
                         Plaintiffs,         82-CV-621T

             v.                              DECISION
                                             and ORDER
UNITED STATES OF AMERICA,

                         Defendant.
_____
```

## INTRODUCTION

By Decision and Order dated March 25, 2014, I granted plaintiffs' motion to enforce the settlement agreement (the "Agreement" or "Settlement Agreement") in this action, and Ordered the defendant United States to make payments to the plaintiffs in accordance with the terms of the Agreement which was made an Order of this Court on April 29, 1985. Under the original terms of the Agreement, the plaintiffs were to receive monthly payments, along with larger periodic payments as set forth in the schedule of payments listed in the Agreement. To facilitate making the agreed payments, the defendant purchased an annuity from the Executive Life Insurance Company of New York ("ELNY") and all payments were to be made from the annuity.

In 2013, however, ELNY was liquidated, and the plaintiffs began receiving only approximately one-half of the amounts they were entitled to under the Settlement Agreement. Plaintiffs thereafter moved this Court to enforce the terms of the Agreement, claiming that under those terms, the United States guaranteed that

the full amount of future payments would be made to the plaintiffs, and that as a result of ELNY's inability to pay the full amount of the settlement proceeds, the defendant was required to remit the additional amounts required to make plaintiffs whole under the agreement. By Decision and Order dated March 25, 2014, I granted the plaintiffs' motion to enforce the settlement.

The Government now moves for reconsideration of my March 25, 2014 Decision and Order on grounds that this Court overlooked facts, which, had they been considered, would have established that this Court failed to retain jurisdiction over the enforcement of the settlement of this action. The Government further argues that this Court overlooked binding legal precedent establishing that this Court lacks jurisdiction to enforce the settlement agreement because the Government did not wave its immunity to be free from such an action in district court. Defendant additionally argues that it is prohibited by law from making future payments as directed by the Court, and therefore, because the Government is legally incapable of making such payments, the Court must relieve the Government of that obligation. Finally, the Government objects that the Court failed to allow the Government to address the merits of plaintiffs' motion to enforce the settlement, and should have permitted the Government to file additional opposition papers to the plaintiffs' motion.

For the reasons set forth below, I deny the defendant's motion for reconsideration.

## BACKGROUND

In 1985, during the trial of plaintiffs' injury claims against the Government, the parties agreed to settle the case, and in doing so, entered into a "structured" settlement whereby the United States would be obligated to pay plaintiff William Hendrickson an initial lump sum payment of $151,782.66, and additional future payments including $2,500.00 per month for 40 years (which amount would be increased by 4% annually); $625,000.00 in 10 lump sum payments over the course of 24 years; and $80,000.00 in eight equal lump sum payments to assist with anticipated educational expenses of the plaintiffs' children. Pursuant to its obligation to make future payments to the plaintiffs, the Government purchased an annuity from the Executive Life Insurance Company of New York in the amount of $522,217.34. Under the terms of the settlement agreement, the United States retained "sole" ownership of the annuity.[1]

Until 2013, the payments owed to plaintiffs were made as required under the terms of the parties' settlement agreement. In 2013, however, ELNY was liquidated, and the plaintiffs were informed that they would be receiving approximately one-half of

---

[1] The Government now claims, however, that it paid Executive Life Corporation $1,000.00 for Executive Life to become the owner of the annuities by virtue of a qualified assignment agreement.

their payments. The plaintiffs attempted to recoup the remaining amounts owed under the settlement from the defendants, but the defendants refused to contribute any additional payments, and as a result, the plaintiffs moved this Court to enforce the April 29, 1985 settlement agreement.

By Decision and Order dated March 25, 2014, I granted plaintiffs' motion to enforce the terms of a settlement agreement entered into by the parties. In that ruling, I held that because the Settlement Agreement entered into by the parties required the approval of the Court, and was made an Order of the Court, this Court retained jurisdiction to enforce the Order issued on April 29, 1985. I further held that this Court retained ancillary jurisdiction in this matter to enforce its own Orders, and therefore the Government was precluded from claiming that sovereign immunity prohibited this Court from exercising jurisdiction over the defendant, or that any motion to enforce the Settlement Agreement could only be brought before the United States Court of Federal Claims. Finally, I held that under the terms of the Settlement Agreement, the Government is obligated to make the payments promised to the plaintiffs, and that any shortfall in payments resulting from the liquidation of ELNY must be satisfied by the defendant.

DISCUSSION

I.   Standard of review on a motion for reconsideration.

A motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) may be properly brought if it appears that the court overlooked controlling decisions or factual matters which might reasonably be expected to alter the court's decision.  "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transpiration, Inc., 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration, however, may not be used to relitigate matters already considered by the court, and may not be used to introduce new evidence that could have been brought to the court's attention during the original proceedings. Films by Jove, Inc. v. Berov, 250 F.Supp.2d 156, 175 (E.D.N.Y., 2003).

II.   The Court Retained Jurisdiction to Enforce the Settlement Agreement

In my March 25, 2014 Decision and Order, I held that this court retained jurisdiction to enforce the settlement because the terms of the settlement were reduced to a written agreement that required approval of the Court, and was made an Order of the Court. I held that under the Court's inherent authority to enforce its

Orders, this Court retained jurisdiction to enforce the Court Order which incorporated the terms of the settlement.

The Government now seeks reconsideration of that holding on grounds that the April 29, 1985 Order of the Court approving the settlement was filed after this case was closed by the Clerk of the Court. The Government contends that because the Order was filed after the case was closed, the Court no longer had jurisdiction to issue such an Order.

Having presided over the trial and settlement of this action, this Court is fully aware of the sequence of events that led to the settlement of this action. Following several days of trial testimony, the parties informed the Court of their intention to settle the matter, and at my insistence, the parties spread the terms of the settlement on the record. The parties also indicated that they would reduce the oral agreement to a written settlement agreement. The parties then spread the terms of the settlement on the record, and I made inquiry of plaintiffs and all counsel as to whether or not they understood and accepted the terms of the Agreement. All parties and counsel indicated that they agreed to the terms, and it was understood that the terms would be formalized in a written settlement agreement. Based on the representations made in open court and on the record, I directed the Clerk of the Court to administratively close the case on the basis of the settlement reached by the parties. The mere fact that the written

Settlement Agreement was submitted to the Court for approval approximately one-month after the Clerk of the Court closed the case does not render the Agreement a nullity. It was fully anticipated by the parties and the court when the parties spread the terms of the settlement agreement on the record that a written settlement agreement would be entered into by the parties. The Government was well aware that the case had been closed at the time it submitted the Agreement to the Court and sought the Court's approval of the settlement terms. Accordingly, any claim that the Court lacked authority to approve the settlement or issue the Order approving the settlement because the case was closed should have been made at the time the Agreement was submitted to the Court-not 29 years after the event. In short, the Government cannot now claim that the Court lacked authority to issue the final Order approving the settlement when it was aware of the facts giving rise to that argument in 1985. To the contrary, the Government, knowing that the case had already been closed, did not object to the Court issuing such an Order confirming the settlement, and indeed, sought the final Order from the Court approving the explicit terms of the Settlement Agreement.

> III. Sovereign Immunity cannot shield the Government from Complying with this Court's Order Approving Settlement of <u>this Case</u>.

The defendant contends that the current action by the plaintiffs to enforce the Settlement Agreement is essentially a

breach of contract action against the Government, and because the action involves sums greater than $10,000.00, any such action to enforce the Agreement must be brought in the United States Court of Claims. Defendant argues that even if the Court attempted to retain ancillary jurisdiction to enforce the settlement, such an attempt to retain jurisdiction would be void because the defendant did not, and could not waive its sovereign immunity to be free from contract claims brought in district courts involving sums greater than $10,000.00. Defendant claims that the Court failed to identify an explicit waiver of immunity which would allow it to retain jurisdiction over any settlement agreement involving the Government where the amount in controversy is greater than $10,000.00.

If the Settlement Agreement entered into by the parties in this case was merely a private agreement between the plaintiff and the defendant, the Government's argument would be correct. In such a case, an attempt to enforce that Agreement would be a contract action, and an independent basis for jurisdiction would be required for the court to entertain such an action. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994) (Enforcement of a settlement agreement . . . "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

In this case, however, the plaintiffs are seeking to enforce an Order of the Court that was issued pursuant to the Court's lawful jurisdiction over the parties under the Federal Tort Claims Act. There is no question that the Federal Tort Claims Act waives the Government's sovereign immunity from personal injury suits brought by citizens for money damages in the district courts of the United States. U. S. v. Kubrick, 444 U.S. 111, 117 (1979)(Tort Claims Act constitutes a waiver of sovereign immunity allowing federal government to be sued by its citizens for personal injuries resulting from governmental conduct ); Kosak v. United States, 465 U.S. 848, 852 (1984)(Tort Claims Act constitutes a "broad" waiver of the Government's immunity from claims by citizens). By waiving immunity and acceding to the jurisdiction of this Court, the Government consented not only to being sued by a citizen, but also to being bound by Court Orders issued pursuant to the Court's lawful and proper jurisdiction. This Court had authority to issue an Order approving the settlement of this action, and accordingly, retains jurisdiction to enforce that Order. See Reed v. United States, 891 F.2d 878, 880 (11th Cir., 1990) (district court's jurisdiction "includes the power to enforce a settlement resulting from the claim that provided the basis for jurisdiction").

The instant case differs from Kokkonen, where the judge who approved the settlement of that action merely dismissed the action

upon the representation of the parties that the case had been settled, and did not see or review the settlement agreement between the parties, or make the settlement agreement an Order of the Court. In that case, any attempt to enforce the private settlement agreement between the parties–an agreement that was not made an Order of the Court or even seen by the Court--would have required an independent basis for jurisdiction over the government. In the instant case, however, the waiver of sovereign immunity that allowed this Court to issue the Order approving the settlement permits this Court to enforce that Order. Any rule suggesting that the Court is required to find an independent basis of jurisdiction to enforce its own lawfully issued Orders would eviscerate the jurisdiction of the court, and would render meaningless the waiver of immunity created by the Tort Claims Act. Yet the defendant argues that although it consented to be sued under the Tort Claims Act for plaintiffs' personal injury claims, it did not consent to enforcement of the Order settling the claim. Such a position is untenable. The Government waived its sovereign immunity when it permitted tort claims to be brought against it, and that waiver extends to any attempt to enforce an Order of the Court issued pursuant to its lawful subject matter jurisdiction over the parties.

Defendant claims, however, that even where a settlement agreement has been approved by the Court, any attempt to enforce

such an agreement constitutes a separate action that requires a waiver of sovereign immunity to proceed. In support of this argument, the defendant cites Presidential Gardens Associates v. U.S. ex rel. Sec'y of Hous. & Urban Dev., 175 F.3d 132 (2d Cir. 1999), a case in which the Second Circuit Court of Appeals held that it lacked jurisdiction to award damages to plaintiffs for the alleged breach of a settlement agreement between the plaintiffs and the United States. In that case, the plaintiffs brought an action in a Massachusetts District Court against the United States seeking damages for the government's alleged breach of a settlement agreement approved by a Federal District Court and Bankruptcy Court in Connecticut. Plaintiffs claimed that they suffered damages when the government, in contravention of promises made in a settlement agreement, failed to give "first priority" in the processing of certain transactions undertaken by the plaintiffs.

According to the defendant here, Presidential Gardens establishes that even where a district court has approved a settlement agreement and has retained ancillary jurisdiction to enforce the settlement, the court lacks jurisdiction to do so because the government has not waived its immunity from such an action in district court.

Presidential Gardens, however, is easily distinguishable from the case at bar. In Presidential Gardens, the plaintiffs brought an action for damages resulting from an alleged breach of contract.

The plaintiffs were not seeking enforcement of the settlement agreement, but were instead seeking damages for an alleged breach of the settlement agreement. Because the action brought by plaintiffs in that case was a completely new proceeding brought before a court that had not been involved in the original matter giving rise to the settlement agreement, and because the action brought by plaintiffs sought damages for an alleged breach of a settlement agreement (rather than enforcement of that agreement), the Second Circuit Court of Appeals properly held that an independent basis for jurisdiction to adjudicate the dispute was required, as was a showing that the government consented to be sued for such a claim in district court. Because the plaintiffs in that case could not establish that the government consented to be sued in district court for a breach of contract involving sums greater than $10,000.00, the Court properly found that the plaintiffs could not proceed with such a claim.

In this case, however, the plaintiffs have not initiated an action for breach of contract. They are not seeking damages against the Government for any breach. Rather, they have filed a motion requesting the Court to enforce an Order that it issued approximately 29 years ago. As stated above, because this Court had authority under the Tort Claims Act to issue that Order, it has authority under the Tort Claims Act to enforce that Order. Moreover, the mere fact that contract issues might be raised in

resolving a motion to enforce a settlement does not mean that the Court of Claims has exclusive jurisdiction over such an action. Rather, where "the parties are really seeking to enforce or vacate an agreement reflected in a court Order that arose from a case instituted pursuant to the F[ederal] T[ort] C[laims A[ct]" jurisdiction properly lies with the district court that entered the Order settling the matter. White v. U.S. Dep't of Interior, 639 F. Supp. 82, 86 (M.D. Pa. 1986) aff'd, 815 F.2d 697 (3d Cir. 1987)(holding the Court retained jurisdiction to resolve motions to vacate or enforce settlement agreement where settlement agreement was made an Order of the Court and Court retained ancillary jurisdiction to enforce the settlement). See also Tennessee ex rel. Leech v. Dole, 749 F.2d 331 (6th Cir.1985), cert. denied, 472 U.S. 1018, (1985)(holding that where an action was not grounded in contract, Court of Claims did not have exclusive jurisdiction over a suit merely because it raised contract-related issues). Because the instant motion seeks enforcement of a Court Order, and not damages for a breach of contract, and because the Court retained jurisdiction to enforce the settlement, I find that this Court has jurisdiction to adjudicate plaintiffs' motion to enforce the settlement agreement.

IV. Future Payments

The Government contends that this Court's Order directing the defendant to supplement the payments owed plaintiffs under the

Settlement Agreement is invalid per se because the government cannot be ordered by a Court to be obligated to make future payments as part of a judgment against the Government. In support of this argument, the defendant cites cases which purport to establish that the Government cannot be bound to make future payments, and can only be required to make a lump sum payment for damages in connection with any judgment against it in an action brought under the Federal Tort Claims Act. Assuming arguendo that a court cannot impose a structured settlement upon the Government as part of an award of damages in a judgment against the United States in a case arising under the Tort Claims Act, such a prohibition is inapposite here where the Government voluntarily consented to undertake the making of future payments by agreeing to a structured settlement. The Government does not argue, nor can it, that the United States cannot enter into a settlement agreement providing for future payments to be made to a plaintiff. As reported cases demonstrate, the Government has routinely agreed to such payments. Rather, the Government argues that once it has agreed to a settlement that will provide for future payments to a plaintiff (and has enjoyed the benefit of that bargain by purchasing an annuity at a cost far less than the amounts promised to be paid to the plaintiff) it is not responsible to ensure that those payments are actually made as agreed to, and cannot be held liable if in fact the payments are not made as originally promised.

As I stated in my March 25, 2014 Decision and Order, however, I find that the Government agreed not only to purchase the annuity that would fund plaintiffs' future payments, but also guaranteed that those payments would be made. In so holding, I relied on that portion of the parties' Agreement which provided that "[t]he purchase of [the] annuity contracts . . . <u>and payments thereunder</u> shall operate as full and complete discharge and satisfaction of the periodic or other payments with respect to the United States of America, pro tanto." (Emphasis added). This provision clearly expresses that the Government agreed to not only purchase the annuity for the benefit of the plaintiffs, but also guaranteed to make the payments promised in the Settlement Agreement. To argue that the Government satisfied its obligations under the Agreement by merely purchasing the annuity (and paying the initial lump sum as set forth in the Agreement) would ignore the clear language of the Agreement requiring that the payments listed in Agreement be paid. The Government agreed to settle this case by paying an initial lump sum, and making future payments. It chose to fund those payments with the purchase of an annuity. That ELNY, the provider of the annuity, can no longer make the total payments owed by the defendant to the plaintiffs is not a burden to be borne by the plaintiffs. It was the Government's promise, and it is the Government's responsibility to meet that promise.

In support of its claim that it can not be held liable for the failure of ELNY to make full payment to the plaintiffs, the Government cites to the case of Linebarger v. United States, 927 F.Supp. 1280 (N.D. Cal., 1996) where the District Court for the Northern District of California held that the Government could not be held responsible for a shortfall in structured-settlement payments resulting from the insolvency of the Executive Life Insurance Company of California. In Linebarger, the court held that it retained jurisdiction to enforce a settlement agreement between the plaintiffs and the United States (a position opposed here by the Government) but held that the agreement at issue in that case did not provide that the Government would guarantee future payments, and therefore the Government was not obligated to supplement the diminished payments plaintiffs received.

Linebarger, however, is significantly different from the case at bar in that in Linebarger, the Government "no longer had any authority regarding the annuity" once it purchased the annuity. Linebarger, 927 F.Supp. at 1282. In this case, however, the Settlement Agreement specifically provided that the United States retained ownership of the annuity, including authority to change the beneficiary of the annuity. Accordingly, this case is not analogous to Linebarger.[2] Moreover, the fact that the agreement at

---

[2] Defendant asserts that it did not own the annuity at issue because it transferred its ownership rights to First Executive Corporation. While the defendant may have voluntarily transferred any rights or authority over the

issue in <u>Linebarger</u> did not contain any promise by the Government to ensure future payments is inapposite to the Agreement before this Court–where the Government did agree to guarantee such payments.

Indeed, my holding that the Government is obligated to supplement the diminished payments now being received by the plaintiffs is in accord with the decision of the Federal Circuit Court of Appeals in <u>Massie v. United States</u>, 166 F.3d 1184 (1999). In <u>Massie</u>, the Federal Circuit held that where a settlement agreement under the Military Claims Act required the Government to purchase an annuity and make payments pursuant to a structured settlement, the Government was required to make up any shortfall in future payments made to the plaintiffs after the provider of the annuity became insolvent. In <u>Massie</u>, the trial court held that the Government was not obligated to make future payments upon the insolvency of the annuity provider, and that the Government had fully discharged all of its obligations under the settlement of plaintiffs' personal injury claim at the moment it funded the annuity. The Court of Appeals, however, found that the language of

---

annuity to First Executive Corporation, such an action was taken of its own accord, and cannot relieve defendant of its duties to the plaintiffs as set forth in the Settlement Agreement. <u>See</u> <u>Auerbach v. State Tax Comm'n</u>, 142 A.D.2d 390, 394, 536 N.Y.S.2d 557, 560 (1988) ("A party to a contract is not relieved of his obligations by a simple assignment of the contract; the assignment must specifically provide for a release from liability upon assignment.")

the settlement agreement in that case clearly and unambiguously expressed that the Government was responsible for making the future payments. Specifically, the Court of Appeals held that the language of the settlement agreement providing that the "annuity 'will result in distributions' and that the disbursements 'shall be paid' [wa]s unambiguously mandatory and [said] unequivocally that the [plaintiffs] must receive the payments." Massie, 166 F.3d 1184, 1190. Such is the case here, where the Government agreed, inter alia, that it was required to make the payments promised under the Agreement to satisfy its obligations thereunder.

That the Government chose to purchase an annuity to facilitate the making of those payments does not relieve it of its obligations to make those payments. As the Court in Massie stated:

> Because the [settlement] payments are mandatory, the government must be responsible for their payment; no one else is a party to the Agreement. Although the government may delegate its duties under the Agreement to another entity, such as Executive Life Insurance Company, this delegation does not absolve it of its obligations.

Massie, 166 F.3d 1184, 1190 (citing Olson Plumbing & Heating Co. v. United States, 221 Ct.Cl. 197, 602 F.2d 950, 958 (Ct.Cl., 1979). Here, the plaintiffs settled their case with the Government, not ELNY. It was the Government that undertook the obligation to fund the settlement and ensure that the payments promised under the settlement would be made. The Government's delegation of its duty to make payments to the plaintiffs does not absolve it of its

obligation to make those payments. To the extent that the payments are no longer being made in full, the Government is responsible for making the plaintiffs whole.

    V.    The Government had Ample Opportunity to Address the Merits of Plaintiff's Motion to Enforce

Defendant contends on this motion that reconsideration of my March 25, 2014 Decision and Order is warranted because the Court did not give it an opportunity to address the merits of plaintiffs' motion to enforce. Specifically, defendant claims that when it filed its brief opposing the plaintiffs' motion, it addressed only the jurisdictional issues presented by the motion, and sought permission from the Court to supplement its briefing should the court decide that it had jurisdiction to rule on plaintiffs' motion. The Government complains that the Court failed to recognize or grant its request when it ruled on both the jurisdictional issues and the merits of plaintiffs' motion.

Defendant's motion for reconsideration on this basis is denied. The Government responded to plaintiffs' motion as it saw fit, and was not prevented from addressing the merits of plaintiffs' motion in its opposition papers. While the defendant may have preferred to address the merits of plaintiffs' motion only after the Court made a ruling on the jurisdictional issues, no party is entitled to piecemeal argument of a motion, and the Government chose not to address the merits of plaintiffs' motion at its own peril.

CONCLUSION

For the reasons set forth above, I deny the defendant's motion for reconsideration.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
       MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          May 20, 2014